UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
————————————

№ 23-CV-08701 (RER) (LGD)
————————————

ANDRE HINDS

VERSUS

PSEG LONG ISLAND LLC, LONG ISLAND
ELECTRIC UTILITY SERVCO LLC,
NATIONAL GRID ELECTRIC SERVICES, LLC,
MICHAEL ABRAMS, AND
MICHAEL STAR
————————————

**MEMORANDUM & ORDER**
————————————

**RAMÓN E. REYES, JR., District Judge:**

Plaintiff Andre Hinds sues two corporate entities and two individuals for years of alleged race- and disability-based discrimination, retaliation, and a hostile work environment in violation of 42 U.S.C. § 1981, Title VII of the Civil Rights Act, 42 U.S.C § 2000e *et seq.*, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112 *et seq.*, New York State Executive Law § 296 ("NYSHRL"), and the Administrative Code of the City of New York § 8-107 ("NYCHRL"). Defendants move to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. After carefully reviewing the record, and for the reasons set forth herein, defendants' motions are granted in part and denied in part.

## BACKGROUND[1]

I.    Factual Background

Plaintiff Andre Hinds ("Plaintiff" or "Hinds") is a black man of Jamaican descent who took medical leave at various times over the course of his employment. (ECF No. 33 ¶¶ 10–11 ("Am. Compl.")). Plaintiff alleges that defendants discriminated and retaliated against him based on his race, color, and disability, and engagement in protected activity. (*Id.* ¶¶ 33–34).

Plaintiff alleges that defendants PSEG Long Island LLC ("PSEG") and Long Island Electric Utility Servco LLC ("Servco") jointly employed him. (*Id.* ¶¶ 12–13,15). Hinds further alleges that individual defendants Michael Abrams ("Abrams") and Michael Star ("Star") (collectively "Individual Defendants") were his supervisors during his employment with PSEG and Servco. (*Id.* ¶¶ 19–25). PSEG, Servco, Abrams, and Star are collectively referred to herein as "Defendants."

Plaintiff was hired in 2004 to work in Defendants' gas department in Long Island and Queens. (*Id.* ¶ 26).[2] Plaintiff alleges that in 2005, a white male on-site trainer made discriminatory comments including asserting that black men were unable to do the job or only hired because of affirmative action. (*Id.* ¶ 36). That same year, Hinds was promoted to the electric lineman position, and, about five years later, to the troubleshooter position.

---

[1] The Court acknowledges and offers its deep gratitude to Sybil Eklof, a judicial intern and third-year law student at Brooklyn Law School, for her assistance in researching and drafting this memorandum and order.

[2] The Court's reference to Hinds allegations against PSEG in no way acknowledges that PSEG was in fact Hind's employer, a fact which PSEG expressly contests. (*See* ECF No. 39-1 at 10, 14). It is merely an acknowledgement that Plaintiff *contends* that PSEG was his employer.

(*Id.* ¶¶ 38–43). He hoped for further promotion but alleges that white colleagues received promotions over him. (*Id.* ¶¶ 57–48).

In March 2010, Hinds injured his shoulder "working on the pole." (*Id.* ¶ 49). Plaintiff told Abrams about the injury, and was summoned for a meeting the next day, where Abrams behaved in a manner which made Hinds feel humiliated about his injury and fearful of taking necessary time off to heal. (*Id.* ¶¶ 49–54). Plaintiff needed surgery five months later because of his injury and took medical leave. (*Id.* ¶ 55).

In July 2010, Hinds expressed interest in the Emergency Service Specialist ("ESS") position to his shop steward, who indicated that Hinds would be eligible for one of the available positions. (*Id.* ¶¶ 60–61). Employees in ESS positions receive better pay, a more stable schedule, and other benefits. (*Id.* ¶ 57). However, according to Plaintiff, in October 2010 PSEG gave the positions to less qualified white employees who had not taken medical leave, and, instead, gave Plaintiff a Relief ESS ("RESS") position. (*Id.* ¶¶ 65–67, 72). Hinds contends he was humiliated by this decision. (*Id.* ¶ 68). While Plaintiff was in the training academy for the RESS position, Star told him, "You're a wounded animal and we have shifts to fill." (*Id.* ¶ 83). One of the trainers told Hinds he was "too stupid" for the higher-level position and should not have been considered for the RESS position either. (*Id.* ¶¶ 81, 84). After Hinds returned in January 2011, PSEG employees wrote "RESS Boy" on his locker, humiliating and intimidating him. (*Id.* ¶ 87). Plaintiff complained to Star and to Kathy Irizarry ("Irizarry") in human resources, but they took no corrective action. (*Id.* ¶¶ 88–89).

In July 2011, Hinds was hospitalized with a blood infection and was approved for medical leave from July 23, 2011, through August 10, 2011. (*Id.* ¶¶ 90–91). Plaintiff

notified Star that he would be unable to work and supplied human resources with the information they requested. (*Id.* ¶¶ 90–92). When Hinds returned to work at PSEG on August 11, 2011, PSEG informed him that he was being suspended without pay for failing to timely provide medical certifications from August 12, 2011, through August 13, 2011, even though he received no complaints from PSEG during his medical leave about improperly submitted documents. (*Id.* ¶¶ 94–97). According to Plaintiff, his shop steward and foreman both confirmed that PSEG imposed the suspension as a form of retaliation for him taking medical leave. (*Id.* ¶¶ 100–01).

According to Hinds, defendants continued to discriminate against him for years thereafter. (*Id.* ¶ 102). In 2016, Plaintiff's co-workers created posters with Plaintiff's face superimposed over a drawing of someone in a hospital bed and on a "missing persons" milk carton, referencing his sick leave. (*Id.* ¶¶ 103–06). These were distributed among employees or affixed to his locker. (*Id.*) Hinds complained to Star and Irizarry about his co-workers' actions, but PSEG took no corrective action. (*Id.* ¶¶ 107–10). In 2018, a different colleague also stated to Plaintiff that black people can procreate "until they are well into their 50s." (*Id.* ¶ 120). Three years later, in July 2019, PSEG "pretextually terminated" Plaintiff's employment but, within two weeks, modified the termination to a suspension. (*Id.* ¶ 121). During summer 2020 protests regarding George Floyd's killing, PSEG threatened Plaintiff with disciplinary action for wearing an "I Can't Breathe" COVID-19 face mask to work, even though his co-workers were allowed to wear "Blue Lives Matter" and "Make America Great Again" ("MAGA") face masks. (*Id.* ¶¶ 124–25).

The following summer in June 2021, Abrams ordered Hinds to work outside in the "sweltering" heat for thirteen and a half hours rather than indoors with his white coworkers,

forced him to use a more distant bathroom, and failed to offer him complimentary food supplied by the job site. (*Id.* ¶¶ 126–27). In July 2021, Plaintiff notified Abrams of his hypertension. (*Id.* ¶ 128). In response, Abrams threatened to demote or reclassify Hinds if he did not "get [his] blood pressure down," and did not allow him to drive a company pick-up truck to work sites for six weeks. (*Id.* ¶¶ 128–29). Meanwhile, PSEG permitted Plaintiff's non-black co-workers who suffered medical conditions to continue working. (*Id.* ¶ 130). Hinds complained to a supervisor about Abrams' threats of reclassification, but PSEG did not address the issue. (*Id.* ¶ 132–33).

On September 10, 2021, a noose in the colors of the Jamaican flag was found hanging inside a PSEG tool container used by Plaintiff and another colleague who is also a black man of Jamaican descent. (*Id.* ¶ 134). Another noose was allegedly discovered two months later on a receiving dock. (*Id.* ¶ 135). Hinds complained to Abrams after each noose incident. (*Id.* ¶ 136).

In March 2022, Plaintiff clipped the mirror of another vehicle, and even though the other driver was at fault, PSEG forced Plaintiff to attend extra training and restricted his truck access and ability to work overtime for three weeks. (*Id.* ¶ 139). PSEG gave Hinds' white coworkers a three-day ban for more serious at-fault collisions and did not require them to attend extra training. (*Id.* ¶ 140). Plaintiff also alleges that in October 2022, security prohibited him from parking inside the yard because a swastika was found affixed to a light post within PSEG property. (*Id.* ¶¶ 141–42). And, when PSEG acquired a new tool in spring 2024, PSEG gave it to employees with less seniority than Plaintiff, but not to Plaintiff. (*Id.* ¶ 145).

5

Hinds generally alleges that the ongoing discrimination has caused him extreme emotional distress, anxiety, depression, exacerbation of preexisting medical conditions, and financial hardship in the form of lost salary, bonuses, and benefits. (*Id.* ¶¶ 147–50).

II.     Procedural History

Plaintiff filed an EEOC charge on August 22, 2022, and received a Right to Sue notice on September 12, 2023. (*Id.* ¶ 5). He commenced this action on November 25, 2023, alleging employment discrimination against Defendants, including PSEG Power, LLC. (ECF No. 1). On January 1, 2023, Plaintiff voluntarily dismissed the action against Defendant PSEG Power, LLC. (ECF No. 9). The original complaint was dismissed and on June 21, 2024, Plaintiff filed an Amended Complaint with additional allegations of discrimination. (*See* Am. Compl.). In addition to damages, Plaintiff asks for an injunctive order, permanently restraining all Defendants from engaging in such unlawful conduct. (*Id.* ¶ 41). Defendants PSEG Long Island and Servco, and then Individual Defendants Michael Abrams and Michael Star moved to dismiss the amended complaint on the grounds that the claims are either untimely or insufficiently pleaded. (ECF No. 39-3 ("PSEG Mem."); ECF. No. 40-1 ("Ind. Defs.' Mem.")). Plaintiff opposed the motions (ECF No. 39-2 ("Opp'n PSEG"); ECF No. 40-2 ("Opp'n Ind. Defs.")), and Defendants replied (ECF. No. 39-8 ("PSEG Reply"); ECF No. 40-3 ("Ind. Defs.' Reply")). Although the amended complaint includes defendant National Grid, Plaintiff does not make any specific allegations in the amended complaint, or any arguments in his opposition, that directly reference National Grid's actions.

**LEGAL STANDARD**

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). The party asserting subject matter jurisdiction must establish by a preponderance of the evidence that jurisdiction exists. *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008). In evaluating a Rule 12(b)(1) motion to dismiss, a district judge must "accept[] all material factual allegations in the complaint as true," but should "refrain from drawing inferences in favor of the party asserting subject matter jurisdiction." *Gonzalez v. Inn on the Hudson LLC*, 20-CV-9196 (ER), 2022 WL 974384, at * 2 (S.D.N.Y. Mar. 30, 2022) (citation omitted).

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 697 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In assessing a Rule 12(b)(6) motion, a district court may also "consider documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010). A court must accept as true all well-pleaded facts in the complaint and draw all reasonable inferences in the plaintiff's favor. *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). "Fact-specific question[s] cannot be resolved on the pleadings," *Todd v. Exxon Corp.*, 275 F.3d 191, 203 (2d Cir.

2001), and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

## **DISCUSSION**

I.    <u>The Court Has Jurisdiction Over Hind's Adequately Pleaded NYCHRL Claims</u>

Defendants argue that the Court lacks subject matter jurisdiction over Hinds' NYCHRL claims, and in any event, that he fails to adequately plead such claims, because he does not allege that the "impact" of the discrimination and retaliation fell within New York City. (PSEG Mem. at 33–34; Ind. Defs.' Mem. at 16–18)[3]. The Court disagrees for at least two reasons.

First, although a nonresident plaintiff bringing a discrimination claim under NYCHRL must establish some impact from the allegedly discriminatory conduct within the City's boundaries, *e.g., Hoffman v. Parade Publ'ns*, 15 N.Y.3d 285, 291 (N.Y. 2010), the failure to do so does not per se result in the lack of *federal* subject matter jurisdiction, *see generally Ronen v. FlipCX, Inc.*, No. 21-CV-2732 (RPK) (RML), 2025 WL 2590393, at *2 (E.D.N.Y. Sept. 8, 2025); *Lieberman v. C.A. Goldberg, PLLC*, No. 21-CV-5053 (ENV) (JAM), 2025 WL 1607098, *6-7 (E.D.N.Y. Apr. 30, 2025). Regardless, as the Court has federal question jurisdiction over some of Hinds' discrimination and retaliation claims, it has supplemental jurisdiction over his NYCHRL claims as they "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367.

---

[3] Page references throughout are to the page numbers delineated in the headings of the ECF filings.

Second, despite Defendants' contentions that Hinds does not adequately allege an impact of the discrimination and retaliation within New York City (PSEG Mem. at 33–34; Ind. Defs.' Mem. at 16–18), this is not so. Defendants' attempts to minimize Plaintiff's allegation that he worked "two to three days *each week* in Queens, New York" (Am. Compl. ¶ 27) (emphasis added), woefully miss the mark. Working multiple days each week within the geographic bounds of New York City sufficiently demonstrates that the discrimination and retaliation had, or at least could have had, an impact in New York City. Hinds' position is different from cases where a plaintiff worked "almost exclusively" outside New York City. *E.E.O.C. v. Bloomberg L.P.*, 967 F. Supp. 2d 816, 865 (S.D.N.Y. 2013); *see also Brandenburg v. Greek Orthodox Archdiocese of N. Am.*, No. 20 Civ. 3809 (JMF), 2021 WL 2206486, at *6 (S.D.N.Y. June 1, 2021). Therefore, even though Plaintiff is a Long Island resident, he adequately alleges an impact within New York City and may avail himself of NYCHRL.

II.    Plaintiff's Claims Against PSEG Are Dismissed

Defendants argue that Hinds fails to allege that PSEG was his employer. (PSEG Mem. at 13–16). Plaintiff counters that he adequately alleges PSEG and Servco as either a single or joint employer. (Opp'n PSEG at 8–12). The Court agrees with Defendants that Hinds fails to plead adequately that PSEG was his employer, whether as a single or joint employer with Servco.

To demonstrate that two separate entities "represent a single, integrated enterprise" a plaintiff must allege the two entities have "(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." *Shukla v. Viacom Inc.*, No. 18 Civ. 3522 (PAE), 2019 WL

1932568, at *7 (S.D.N.Y. May 1, 2019) (quoting *Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1240 (2d Cir. 1995)). To evaluate whether a party is jointly employed by two separate entities, courts ask if the entities "share significant control of the same employee." *Felder v. U.S. Tennis Assoc.*, 27 F.4th 834, 843 (2d Cir. 2022) ("the crux of these factors is the element of control." (citing *Gulino v. N.Y. State Educ. Dept.*, 460 F.3d 361, 371 (2d Cir. 2006)).

Defendants correctly argue that the amended complaint is devoid of plausible factual allegations that PSEG and Servco were a single employer of, or that they jointly employed, Plaintiff. (PSEG Mem. at 13–16). Plaintiff is right that he need not "establish" single or joint employer status at the pleading stage, as the ultimate determination is best left to the factfinder. (Opp'n PSEG at 12). But *establishing* such facts is not the same as *plausibly alleging* them, which fails to do. Plaintiff merely alleges in a conclusory manner that Defendants "jointly employed" him, and PSEG is either his "'employer,' and/or 'joint employer,' and/or 'single employer'" (Am. Cmpl. ¶¶ 15–16). He provides no facts—not even one—to support this, offering nothing for the Court to determine the plausibility of such allegations. Such conclusory statements do not suffice, and Plaintiff's later submission of two W-2 statements and two paystubs (Opp'n PSEG at 10–11), do not cure this deficiency. There is no indication that he relied on these documents in his amended complaint, which is the only way the Court could consider them at this stage. *DiFolco*, 622 F.3d at 111.

Furthermore, while the Court might guess from Plaintiff's amended complaint alongside PSEG's motion papers that he assumed he worked for PSEG Long Island since 2004 (Am. Compl. ¶ 26; PSEG Mem. at 10–11, 13–14), —perhaps first at subsidiary

National Grid, and then at subsidiary Servco—he does not proffer any facts as to when he worked under either arrangement, or how either of these arrangements functioned. Without these details, or the benefit of documents that may support his allegations of intertwined operations or financial control, Plaintiff cannot plausibly allege that PSEG and Servco were a single employer or that he was jointly employed by them.

Therefore, all of Plaintiff's claims against PSEG (and National Grid) are dismissed without prejudice.[4] Accordingly, although the amended complaint and motion papers refer to corporate defendants collectively as PSEG, the Court will refer to Servco as the remaining corporate defendant for all claims below, and assess those claims as to Servco, Adams, and Star as required.

III.    Statutes of Limitations

To assert a Title VII claim against an employer, a plaintiff must first bring an EEOC charge within 300 days of the alleged conduct and then file a related lawsuit within ninety days of receiving a notice of right to sue from the EEOC. 42 U.S.C. § 2000e-5; *Tiberio v. Allergy Asthma Immunology of Rochester*, 664 F.3d 35, 38 (2d Cir. 2011). The statute of limitations for claims under the ADA mirrors the requirements under Title VII. *See* 42 U.S.C. § 12117; *De Figueroa v. New York*, 403 F. Supp. 3d 133, 159 (E.D.N.Y. 2019) (first citing *Bowens v. Corr. Ass'n of N.Y.*, No. 19-CV-1523 (PKC) (CLP), 2019 WL 1586857, at *5 (E.D.N.Y. Apr. 12, 2019), then citing *Tiberio*, 664 F.3d at 35). The statute of limitations for claims under section 1981 is four years. *Banks* v.

---

[4] Since the dismissal is without prejudice, Hinds may pursue discovery of PSEG and National Grid as non-parties pursuant to Fed. R. Civ. P. 45, and of Servco as a party, to determine whether PSEG and/or National Grid were his employers, whether singly, jointly, or otherwise.

*Gen. Motors, LLC*, 81 F.4th 242, 260 (2d Cir. 2023). For City and State HRL claims, it is three years, and tolls for the period between filing an EEOC charge and receiving a Right to Sue notice. *Bloomberg*, 967 F.Supp. 2d 816, 831 (citing N.Y. C.P.L.R. § 214; N.Y.C. Admin. Code § 8-502(d)).

Plaintiff filed his EEOC charge on August 22, 2022, and received his Right to Sue notice on September 12, 2023, which renders Title VII and ADA claims occurring prior to October 26, 2021, untimely. Under NYSHRL and NYCHRL, all incidents prior to November 5, 2019, are untimely. For section 1981 claims, all incidents prior to November 25, 2019, are untimely. These timelines hold unless an exception to the limitations period applies. *King v. Aramark Servs. Inc.*, 96 F.4th 546, 559 (2d Cir. 2024) (citing *Banks*, 81 F.4th at 259).

The continuing violation doctrine is an exception that may extend the limitations period for "all claims of discriminatory acts committed under [an ongoing policy of discrimination] even if those acts, standing alone, would have been barred by the statute of limitations." *Bright v. Coca Cola Refreshements [sic] USA, Inc*, No. 12-CV-234 (BMC), 2014 WL 5587349, at *3 (E.D.N.Y. Nov. 3, 2014) (quoting *Annis v. County of Westchester*, 136 F.3d 239, 245-46 (2d Cir. 1998)), *aff'd*, 639 F. App'x 6 (2d Cir. 2015). This applies to federal, state, and city discrimination claims "so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period." *Isbell v. City of New York,* 316 F.Supp.3d 571, 586 (S.D.N.Y. 2018) (quoting *Morgan*, 536 U.S. at 123 (2002)). Under the federal and state laws, untimely discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire do not become actionable on their own even if related to timely

discriminatory acts. *King v. Aramark Servs. Inc.*, 96 F.4th 546, 560–61 (2d Cir. 2024); *see also Gordon v. N.Y. City Transit Auth.*, No. 24-CV-3411 (JAM), 2024 WL 5217932, at *8 (E.D.N.Y. Dec. 26, 2024), *adopted by* Order dated 4/4/2025. However, a timely discrete act that is part of an ongoing practice or policy can prolong the life of otherwise time barred claims to support the timely claim. *King*, 96 F.4th at 560.

This is most easily applied to hostile work environment claims, as the very nature of such claims involves "an assemblage of discriminatory acts" that "transpire over days and years." *Id.* (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002), then citing *Patterson v. County of Oneida*, 375 F.3d 206, 220 (2d Cir. 2004)). In that context, an untimely discrete act may also provide background evidence for the timely hostile work environment claim. *Morgan*, 536 U.S. at 113; *see also Sooroojballie v. Port Auth. of N.Y. & N.J.*, 816 Fed. Appx. 536, 543 (2d Cir. 2020) (summary order) (allowing consideration of a time barred retaliatory act to determine whether it was also based on the racial and national origin animus at the root of a plaintiff's hostile work environment claim).

NYCHRL broadly applies the continuing violations doctrine to discrimination, retaliation, and hostile work environment claims where there is "a consistent pattern or a continuing policy of discriminatory or retaliatory acts." *Gordon*, 2024 WL 5217932, at *8; *Ctr. for Indep. of Disabled v. Metro. Transp. Auth.*, 125 N.Y.S.3d 697, 703 (1st Dep't 2020) ("[T]he reach of the continuous violation doctrine under NYCHRL is broader than either federal or state law."). In this way, NYCHRL does not draw a bright line between timely and untimely acts, whether discrete or not: a plaintiff may proffer "timely and untimely allegations that are connected in a meaningful way" as "part of a discriminatory

policy or practice that reache[s] into the limitations period." *Munjal v. Emirates,* No. 21 Civ. 8401 (PAE), 2022 WL 204775, at *8, *10 (S.D.N.Y. Jan. 24, 2022) (citation modified). Nevertheless, under federal, State, and City law, "incidents that involve different perpetrators, actions, or targets, or are temporally distant from one another, may be insufficiently related." *Bright*, 2014 WL 5587349, at *4 (citing *McGullam v. Cedar Graphics*, 609 F.3d 70, 78 (2d Cir.2010)); *Ghelichkhani v. N.Y. Coll. of Med.*, No. 23-CV-8629 (RER) (AYS), 2025 WL 2494353, at *3 (E.D.N.Y. Aug. 29, 2025).

Plaintiff retains four timely allegations under Title VII and the ADA : (1) the second noose found outside a PSEG platform in November 2021; (2) making Plaintiff attend vehicular training and restricting his truck access after he clipped the mirror of another vehicle in March 2022; (3) prohibiting Plaintiff from parking in his regular yard because a swastika was found on a light post on the property in October 2022, and; (4) the decision not to give Plaintiff the new 800-amp tool in spring of 2024. (Am. Compl. ¶¶ 135, 139, 141–42, 145).

Under section 1981, NYSHRL, and NYCHRL, Plaintiff may timely include four additional actions by Defendants: (1) disciplining Plaintiff for wearing a George Floyd face mask in summer of 2020; (2) assigning Plaintiff to work in the heat, use a more distant bathroom, and not offering him complimentary food and drink in June 2021; (3) threatening to demote Plaintiff and prohibiting him from driving for six weeks after Plaintiff told Abrams about his hypertension in July 2021; and (4) subjecting him to the first noose found in a PSEG container in September 2021. (Am. Compl. ¶¶ 124–25, 126, 128–29, 134).

Plaintiff anchors at least one incident within each applicable statutes of limitations. If he sufficiently alleges an ongoing unlawful employment practice through the above acts, the continuing violations doctrine could also revive otherwise untimely comments, gestures, and images used to harass Plaintiff in 2005, 2010, 2011, 2016, and 2018. *Isbell*, 316 F.Supp.3d at 586. These include derogatory statements by supervisors and coworkers, the humiliating posters with Plaintiff's image, and defendants' failure to act in response to Plaintiff's complaints about this repeated conduct.

However, Servco's decision not to promote Plaintiff in 2010 and 2019, the brief suspension of Plaintiff in 2011, and temporary termination of Plaintiff in 2019 are discrete acts that do not trigger the continuing violation doctrine for Plaintiff's Title VII, ADA, section 1981, or NYSHRL hostile work environment claims. *Morgan*, 536 U.S. at 114. Under NYCHRL, though, these allegations can be rendered timely if they are sufficiently "specific and related" to satisfy the NYCHRL's continuing violations standard. *See Taylor v. City of New York*, 207 F.Supp.3d 293, 302–03 (S.D.N.Y. 2016) (holding that an employer's repeated failure to hire a plaintiff amounted to a continuing violation under the NYCHRL); *see also Munjal*, 2022 WL 204775, at *8–10 (determining that repeated promotion denials by the same supervisor survived dismissal under NYCHRL).

The Court assesses the sufficiency of Plaintiff's reliance on the continuing violations doctrine in turn for each category of claims.

## IV.    Discrimination Claims

Plaintiff has withdrawn his disability discrimination claim under the ADA (Opp'n PSEG at 28), so his Eighth Cause of Action is dismissed. He maintains discrimination claims under Title VII, Section 1981, NYSHRL, and NYCHRL.

A.  Plaintiff Adequately Pleads Title VII and Section 1981 Discrimination Claims

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1); *Buon v. Spindler*, 65 F.4th 64, 78 (2d Cir. 2023). "Section 1981 'outlaws discrimination' on the basis of race 'with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship, such as employment." 42 U.S.C. § 1981(a); *Cooper v. Franklin Templeton Inv.*, 2023 WL 3882977, at *2–*3 (2d Cir. 2023) (quoting *Williams v. N.Y. City Hous. Auth.*, 61 F.4th 55, 70 (2d Cir. 2023)). When analyzing employment discrimination claims under section 1981, courts apply the same standard as Title VII claims. *Haggood v. Rubin & Rothman*, No. 14–CV–34L (SJF) (AKT), 2014 WL 6473527, at *8 (E.D.N.Y. Nov. 17, 2014) (quoting *Vivenzio v. City of Syracuse*, 611 F.3D 98, 106 (2d Cir. 2010)).

At the motion to dismiss phase, a plaintiff need not plead a prima facie discrimination case. *Buon*, 65 F.4th at 79 ("a *prima facie* case is an evidentiary standard, not a pleading requirement. . . . it is not appropriate to require a plaintiff to plead facts establishing a *prima facie* case") (quoting *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 510–11 (2002)); *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015). Rather, a plaintiff must satisfy only two elements: "(1) the employer discriminated

against the employee (2) because of his race, color, religion, sex, or national origin." *Buon*, 65 F.4th at 78 (citing *Vega,* 801 F.3d at 85).

Under this framework, a plaintiff must show that they faced an adverse employment action and allege "facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Vega,* 801 F.3d at 87. The Supreme Court clarified in *Muldrow v. City of St. Louis* that an adverse action is one where a plaintiff experienced "some harm respecting an identifiable term or condition of employment." 601 U.S. 346, 355 (2024).   However, it need not be 'significant.'. . . [o]r serious, or substantial, or any similar adjective suggesting that the disadvantage to the employee must exceed a heightened bar." *Id.* at 357; *see also McCready v. U.S. Postal Serv.*, No. 22-CV-5899 (NJC) (AYS), 2025 WL 1284275, at *14 (E.D.N.Y. May 2, 2025) (quoting *Muldrow*, 601 U.S. at 657).[5]   Nevertheless, the adverse

---

[5] Prior to *Muldrow*, which considered a discrimination claim based on an involuntary transfer, this Circuit "define[d] an adverse employment action as a 'materially adverse change' in the terms and conditions of employment." *Buon*, 65 F.4th at 79 (citing *Sanders v. N.Y.C Hum. Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004)). "*Muldrow* therefore overruled [the Second Circuit's] precedent, which required that the changes to a term or condition of employment be *materially* adverse." *Back v. Hapoalim*, No. 24-1064-CV, 2024 WL 4746263, at *2 (2d Cir. Nov. 12, 2024) (summary order) (emphasis added); *see also Muldrow*, 601 U.S. at 353 n.1 (collecting circuit cases that employed a "heightened threshold of harm," including *Williams v. R. H. Donnelley, Corp.*, 368 F.3d 123, 128 (2d Cir. 2004), which articulated the "materially significant disadvantage" standard). While Servco acknowledges the *Muldrow* standard (PSEG Mem. at 32), it's arguments still rely on "materially adverse" language from pre-*Muldrow* cases (*id.* at 30).

After *Muldrow*, "courts in this [C]ircuit have consistently held" that the revised "standard applies to adverse actions beyond the involuntary transfer context." *Franco v. City of New York*, No. 19-CV-5905 (AMD) (CLP), 2025 WL 964014, at *5 (E.D.N.Y. Mar. 31, 2025) (collecting cases) (explaining that *Muldrow*'s reasoning relied on express Title VII text that is not specific to transfers). And, although the Second Circuit has not yet clarified whether this standard applies to other federal discrimination claims, courts in this Circuit have applied it to federal statutes that share language with, and are analyzed similarly to, Title VII. *See, e.g.*, *Anderson v. Amazon.com, Inc.*, No. 23-CV-8347 (AS), 2024 WL 2801986, at *10 (S.D.N.Y. May 31, 2024) (§ 1981); *Slater v. NYU Langone Health Sys.*, No. 24-CV-03711 (OEM) (SIL), 2025 WL 2208292, at *5 (E.D.N.Y. Aug. 4, 2025) (ADA); *Mitchell v. Planned Parenthood of Greater N.Y.*, 745 F. Supp. 3d 68, 91 (S.D.N.Y. 2024) (ADA and ADEA). Indeed, the Supreme Court itself cites *Muldrow* in defining discrimination

action must be more than a "mere inconvenience." *Stidhum v. 161-10 Hillside Auto Ave, LLC,* No. 21-CV-07163 (OEM) (LB), 2025 WL 327973, at *7 (E.D.N.Y. Jan. 29, 2025) (citation omitted).

To survive a motion to dismiss, a plaintiff "need only give plausible support to a minimal inference of discriminatory motivation." *Littlejohn v. City of New York*, 795 F.3d 297, at 311 (2d Cir. 2015). Showing that an employee outside of a plaintiff's protected group is similarly situated in "all material respects" and was treated more favorably than plaintiff is sufficient to give rise to an inference of discrimination. *Id*. at 312. An employee is similarly situated if they were (1) 'subject to the same performance evaluation and discipline standards' and (2) 'engaged in comparable conduct.' *Senese v. Longwood Cont. Sch. Dist.*, 330 F. Supp. 3d 745, 767 (E.D.N.Y. 2018) (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000)).

Most of Plaintiff's timely federal claims fail to meet these elements. A noose is certainly "a "terrifying symbol of racial hatred" (Am. Compl. ¶ 134) that could constitute an adverse change in work environment because of the racial violence it represents. *See Smith v. Town of Hempstead Dep't of Sanitation Sanitary Dist. No. 2*, 798 F. Supp. 2d 443, 452 (E.D.N.Y. 2011) (collecting cases). But Plaintiff does not plausibly allege that

---

under the ADA. *Stanley v. City of Sanford*, 606 U.S. 46, 61 (2025) ("'Discriminate against' means treat worse" (quoting *Muldrow*, 601 U.S. at 355)).

Where *Muldrow* does not consistently extend is to hostile work environment claims, which Hinds claims in this case. *See Ziparo v. CSX Transp., Inc.*, 160 F.4th 314, 340 n.16 (2d Cir. 2025) ("The effect of *Muldrow* on discriminatory hostile work environment claims is still unclear . . . . We have not yet opined on [this impact] . . . ."). Lastly, *Muldrow* expressly does not alter the standard for an adverse employment action under federal retaliation claims, also at issue in this case, which still must be "material" and "significant." *Muldrow*, 601 U.S. at 348. (citation omitted).

the second noose in November 2021 was indeed a noose, and the photo in the amended complaint (Am. Compl. ¶ 135), does not indicate so either. Without this, it is also difficult to infer a discriminatory motive. Furthermore, although it is Plaintiff who benefits from having his allegations accepted as true as long as they are sufficiently pleaded, the Court notes Defendants do not concede that this second rope was in fact a noose, as they do with the first noose incident. (PSEG Mem. at 19 n.5).

Plaintiff's allegation that he was prohibited from parking in his regular yard because of a swastika on a light pole fails for several reasons. First, a change in parking is no more than a "mere inconvenience," and therefore does not constitute an adverse employment action. *Vega,* 801 F.3d at 85. He also does not allege any discriminatory motive, nor point to any coworkers who were allowed to continue parking in the yard during the investigation.

Similarly, Plaintiff fails on his claim that he was denied access to a tool which his employer gave to "employees with less seniority or who have not made complaints of discrimination." (Am. Compl. ¶ 145). Plaintiff does not offer any facts to allege that this too was nothing more than a "mere inconvenience." *Vega,* 801 F.3d at 85. He also does not provide any information about the purpose of such tools, or name specific coworkers and their "race, color, national origin, job title, and supervisors," in order to allege that they were similarly situated to him. *Placide-Eugene v. Visiting Nursing Servs. of N.Y.*, 86 F.Supp.3d 132, 147 (E.D.N.Y. 2015). Even at the pleading stage, Plaintiff's allegation offers less than what is minimally required for an inference of discrimination. *Littlejohn*, 795 F.3d at 311.

19

Plaintiff's claim that Servco forced him to take extended training and restricted his truck access for a minor no-fault collision does succeed. He sufficiently alleges an adverse employment action because these restrictions prevented him from earning overtime pay. (Am. Compl. ¶ 139). He also sufficiently alleges that similarly situated white coworkers faced less harsh punishments for at-fault driving infractions. (*Id*. ¶ 140). His contention that colleagues outside of his protected category received more favorable treatment is enough at this stage. *Littlejohn*, 795 F.3d at 311.

Section 1981's statute of limitations allows the Court to consider the three additional incidents of race-based discrimination. However, Plaintiff's allegation that he was threatened with discipline for wearing an "I Can't Breathe" face mask while colleagues wearing MAGA and "Blue Lives Matter" masks were not, does not survive dismissal. First, a "threat of discipline," without more, likely does not amount to an adverse employment action. *Mcloughlin v. Vill. of Southampton*, No. 23-CV-6586 (GRB) (AYS), 2024 WL 4189224, at *4 (E.D.N.Y. Sept. 13, 2024); *Alexander* v. *City of New York*, 957 F.Supp.2d 239, 249 (E.D.N.Y. 2013). Second, even if they did, Plaintiff fails to provide facts to support a discriminatory motive. His colleague's unspecified "offensive jokes" about Plaintiff's mask or criticism of Plaintiff's support for the Black Lives Matter movement might concern race, but this does not, in and of itself, rise above "obnoxious" or "petty" behavior. *See Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110–11 (2d Cir. 2013).

Conversely, Plaintiff's allegation about working outside, as well as the first noose incident, both constitute adverse actions with discriminatory intent.    First, Plaintiff contends that he was assigned to work outside in the "sweltering heat," remain outside

for over thirteen hours, not offered food provisions, and forced to use a distant bathroom that day while his "less senior, white, colleagues Rob Jenson and Mr. Miles Burns" were permitted to work inside and use a nearby bathroom. (Am. Compl. ¶¶ 126–27). Despite Servco's minimization of "sweltering heat" to "a warm day in June" (PSEG Mem. at 20), Plaintiff's tangible working conditions were plausibly altered in this instance and his similarly situated coworkers were treated more favorably than he was. Lastly, on the first noose incident, which Defendants rightfully acknowledge as "reprehensible" (*id.* at 19 n.5), it is true that Plaintiff does not provide facts to support his assumption that the colors of the Jamaican flag on the noose made it "clear" "that [he and another black Jamaican colleague] were specifically being targeted" (Am. Compl. ¶ 134). And not all courts agree that a single noose is enough to sustain a discrimination claim. *Smith*, 798 F. Supp. 2d at 452 (collecting cases). Nevertheless, "there is little doubt that the noose is among the most repugnant of all racist symbols, because it is itself an instrument of violence." *Id.* Regardless of the rope colors, the September 2021 noose was in a container that Plaintiff and another black colleague used (Am. Compl. ¶ 134). Such a symbol of racial violence which Plaintiff knew of, was threatened by, and complained about to Abrams, can carry enough weight to alter Plaintiff's employment situation.

Plaintiff's surviving section 1981 discrimination claims are dismissed as to Individual Defendant Star because they do not involve him in any way. Additionally, while several incidents of discrimination under federal laws survive dismissal here (the post-collision training and driving restriction, working in the heat, and the first noose), these are not sufficiently connected to Plaintiff's other untimely allegations concerning varied

actions by known and unknown actors over many years. Therefore, he cannot benefit from the continuing violations doctrine for these claims.

B. Plaintiff Adequately Pleads NYCHRL and NYSHRL Discrimination Claims

NYCHRL and NYSHRL both provide that an employer may not discriminate based on race, national origin, or disability, among other protected characteristics. N.Y. Exec. Law § 296; N.Y.C. Admin. Code § 8-107(1); *Cooper*, 2023 WL 3882977, at *2 (citation omitted). Rather than demonstrate an adverse employment action, "the plaintiff need only show differential treatment—that [he] is treated 'less well'—because of a discriminatory intent." *Deveaux v. Sketchers USA, Inc.*, No. 19-CV-9734 (DLC), 2020 WL 1812741, at *5 (S.D.N.Y. Apr. 9, 2020) (quoting *Mihalik*, 715 F.3d 102, 110). Both laws permit direct liability for employment discrimination not only against the employer, but also against supervisors who participate in the discriminatory conduct. *Id.* at *5 (citing *Feingold v. New York*, 366 F.3d 138, 158 (2d Cir. 2004)).

NYCHRL has traditionally been construed even more "liberally" than NYSHRL. *Anderson v. City of New York*, 712 F.Supp.3d 412, at 435 (S.D.N.Y. 2024); *Farmer v. Shake Shack Enters.*, 473 F.Supp.3d 309, 327 (S.D.N.Y. 2020) ("Discrimination claims under the NYCHRL . . . contain, as to some elements, more liberal pleading and proof standards."). Courts should not understand NYCHRL as "coextensive with its federal and state counterparts," *Ya-Chen Chen v. City Univ. of New York*, 805 F.3d 59, 75 (2d Cir. 2015), but instead analyze NYCHRL claims separately and independently. *Mihalik*, 715 F.3d at 109 (2d Cir. 2013); *Williams v. N.Y.C. Hous. Auth.*, 61 A.D.3d 62, 66–68 (1st Dep't 2009). Still, neither NYSHRL nor NYCHRL serve as "a general civility code," and "a

defendant is not liable if the plaintiff fails to prove the conduct is caused at least in part by discriminatory or retaliatory motives." *Anderson*, 712 F.Supp.3d at 435.

Several of Plaintiff's claims fail even under the City and State's more liberal requirements. This standard does not change the analysis of his claim about the second noose, the denial of parking in the yard after security found a swastika, or the alleged denial of new tools. The noose allegation is unsupported, and he does not allege that other colleagues were able to park when he was not, nor any information about who was given new tools and why. While the city and state laws do not require an adverse action, Plaintiff's allegation about his "I Can't Breathe" face mask does not support a discriminatory motive for the reasons explained above.

Further, Plaintiff's allegation that he was suspended from driving a truck for six weeks after reporting his hypertension to Abrams (Am. Compl. ¶ 128–29), neither suffices to show he was treated worse than similarly situated employees, nor that Abrams' action was motivated by Plaintiff's disability. To support this claim, Plaintiff points to a "non-black" coworker who "was out of a truck for over a year due to a medical condition" without facing consequences from Servco and two other coworkers who had "DOT-disabling issues and were permitted to work in other ways." (Am. Compl. ¶ 130). This does not demonstrate that these coworkers were similarly situated to Plaintiff, because he does not identify the coworkers' medical conditions or their job positions.

On the other hand, Plaintiff alleges several incidents that do meet his City and State burden at the pleading stage. His claim about extra training and truck restrictions after his minor collision survives for the same reasons it does under federal law. Plaintiff sufficiently alleges that he was treated less well than at least three white colleagues who

did not face similar consequences, though they were involved in more serious collisions. (Am. Compl. ¶ 140). Even absent more details about who specifically made this decision and why, this is enough to allege unfavorable treatment with a discriminatory motive under the State and City laws. *See Deveaux*, 2020 WL 1812741, at *5 (holding a pregnant plaintiff's allegations that supervisors did not a afford her the same flexibility as non-pregnant colleagues met NYCHRL's "liberal differential treatment standard").

Similarly, both being assigned to work outside in the heat and the first noose incident, having met the higher federal standard, are "sufficient to support a corresponding claim under the NYSHRL, as well as under the NYCHRL" *Styka v. My Merchants Servs*. LLC, No. 14-CV-6198 (ENV) (VMS), 2016 WL 3866550, at *2 (E.D.N.Y. July 13, 2016); *see also Williams v. N.Y.C. Hous. Auth.*, 154 F. Supp. 2d 820, 824 (S.D.N.Y. 2001) (discussing the historical context, psychological significance, and violent racist symbolism of a noose). Plaintiff plausibly demonstrates that Abrams treated him "less well" than two similarly situated white coworkers when assigning him to work outside and denying him the same bathroom and food provisions on the "sweltering day" in June 2021. (Am. Compl. ¶¶ 126–27). It does not matter whether the event was an adverse employment action, because such a showing is not required by the state and city laws. *Mihalik*, 715 F.3d at 109. That the other colleagues were not in Plaintiff's protected class is enough to infer discriminatory intent. *Deveaux*, 2020 WL 1812741, at *5. The same is true for the noose.

However, these three race-based incidents do not revive other allegations outside of the period of limitations, even under NYCHRL's more liberal inclusion of discrete and non-discrete events. Some of the untimely allegations relate to disability-based

discrimination, which is not connected to race. Other incidents that relate to race are a mix of comments made by trainers or coworkers in 2005, or more tenuous allegations about discriminatory promotion denials, suspension, or temporary termination in 2010, 2011, 2018, and 2019. These sporadic events by different actors, some spanning close to twenty years, are not "connected in a meaningful way" to trigger the continuing violations doctrine. *Munjal*, 2022 WL 204775, at *8, *10; *see also Bright*, 2014 WL 5587349, at *4 (specifying that different perpetrators, actions, or targets, at different times "may be insufficiently related").

The three incidents of discrimination that survive dismissal under NYSHRL and NYCHRL do not concern Defendant Star. Accordingly, these claims endure only as to Servco and Adams.

V. <u>Retaliation Claims</u>

    A.   <u>Plaintiff Fails to Adequately Plead Federal Retaliation Claims</u>

Title VII and section 1981 all apply the same standard for retaliation claims. *Amaya v. Ballyshear LLC*, 295 F.Supp.3d 204, 226 (E.D.N.Y. 2018). At the motion to dismiss stage, a plaintiff need only plead a plausible case under reduced prima facie standards. *Farmer*, 473 F.Supp.3d at 330–31. So, to state a retaliation claim at this stage, a plaintiff must plausibly allege "that (1) defendants discriminated or took an adverse action against him, (2) because he has opposed any unlawful employment practice. *McKinnies v. City of New York*, 2024 WL 4333703, at *8 (E.D.N.Y. Sept. 27, 2024) (quoting *Vega*, 801 F.3d at 90); *Farmer*, 473 F.Supp.3d at 331 (citing *Duplan v. City of New York*, 888 F.3d 612, 625 (2d Cir. 2018) and then quoting *Vega*, 801 F.3d at 90).

A protected activity is an "action taken to protest or oppose statutorily prohibited discrimination." *Farmer,* 473 F. Supp. 3d at 331 (quoting *Wright v. Monroe Cmty. Hosp.*, 493 F. App'x 233, 236 (2d Cir. 2012). Such activity is broadly defined and not limited to formal complaints: if an employee "personally complains or is critical about the discriminatory employment practices of her employer, that employee has engaged in a protected activity." *Littlejohn*, 795 F.3d at 318 (citation modified). "[E]ven without direct evidence of causation, 'a plaintiff can indirectly establish a causal connection to support a . . . retaliation claim by showing that the protected activity was closely followed in time by the adverse employment action.'" *Kwan v. Andalex Grp., LLC,* 737 F.3d 834, 845 (2d Cir. 2013) (alteration omitted). An adverse employment action in this context is one which "could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Vega*, 801 F.3d at 90 (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)). It must be "'materially adverse', meaning that it causes 'significant' harm." *Muldrow*, 601 U.S. at 348, (quoting *White*, 548 U.S. at 68).

The ADA provides that, "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this Act." 42 U.S.C. § 12203; *Brizzi v. Utica Mut. Ins. Co.*, 529 F.Supp.3d 44, 56 (E.D.N.Y. 2021). "A plaintiff pursuing a retaliation claim need not allege that he or she was actually "disabled" within the meaning of the ADA." *Vale v. Great Neck Water Pollution Control Dist.*, 80 F.Supp.3d 426, 439 (E.D.N.Y. 2015) ("[P]revailing on the disability discrimination claim under the ADA is not a prerequisite to prevailing on a retaliation claim under the ADA.") (citation omitted). Rather, the plaintiff must only plausibly satisfy the elements of a retaliation claim under the ADA. *Kastrati v. Progress of Peoples Mgmt. Corp.*, No. 18-CV-

6731 (LDH) (LB), 2020 WL 6940991, at *4 (E.D.N.Y. Nov. 24, 2020). These are: "(i) a plaintiff was engaged in protected activity; (ii) the alleged retaliator knew that plaintiff was involved in protected activity; (iii) an adverse decision or course of action was taken against plaintiff; and (iv) a causal connection exists between the protected activity and the adverse action." *Id.* (quoting *Weixel v. Bd. of Educ. of City of N.Y.*, 287 F.3d 138, 148 (2d Cir. 2002)). For ADA purposes, submitting a complaint to human resources qualifies as a protected activity, while "a request for FMLA leave, without more," does not. *Brizzi*, 529 F.Supp.3d at 56 (E.D.N.Y. 2021) (citing *Kastrati,* 2020 WL 6940991, at *5).

Plaintiff's timely Title VII, ADA, or section 1981 retaliation claims all fail for lack of a protected activity. He does not allege that either noose incident, or the parking prohibition due to the swastika, or the extra training and prolonged driving suspension after his minor collision, or the distribution of new tools, or the threats of discipline when he wore his "I Can't Breathe" face mask, or being forced to work outside in the heat, were in response to any formal or informal complaint Plaintiff made about discriminatory treatment on the basis of race or disability. Had it been timely, Plaintiff's allegation that Adams threatened to demote him and gave him a six-week driving suspension in 2021 after Plaintiff informed Adams about his hypertension would constitute a timely and valid ADA retaliation claim. (Am. Compl. ¶¶ 128–29). Unfortunately, Plaintiff did not meet the deadline and has no other timely and sufficiently pleaded retaliation claims to revive this one.

All allegations that Servco retaliatorily failed to promote or suspended Plaintiff are barred by the federal statutes of limitations, which leaves Plaintiff bare of federal retaliation claims to move forward.

B.    Plaintiff Adequately Pleads a Single Instance of
<u>Retaliation Under NYCHRL and NYSHRL</u>

The NYCHRL and NYSHRL apply the same retaliation standard as the federal statutes but eliminate the adverse employment action requirement. *Bright*, 2014 WL 5587349, at *3. Accordingly, under the HRLs, the retaliatory employment action must only be "reasonably likely to deter a person from engaging in protected activity." *Id*. But again, the action still must be more than a "mere inconvenience or an alteration of job responsibilities." *Patrolmen's Benevolent Ass'n of City of N.Y. v. City of New York*, 310 F.3d 43, 51 (2d Cir. 2002).

The elimination of the adverse employment action factor does not change the analysis for most of Plaintiff's claims: for all but one allegation, his claims similarly fail for lack of a protected activity. However, Plaintiff's decision to report his hypertension to his supervisor constitutes a protected activity. And Abram's subsequent threat of demotion and decision to give Plaintiff a six-week driving suspension is an adverse employment action, because it is one which "could well dissuade a reasonable worker" from making another report about his medical conditions or a request for accommodation in the future. *Vega*, 801 F.3d at 90. Once again though, this claim stands on its own and cannot reach other untimely claims through the continuing violations doctrine, as it is not meaningfully linked to actions by other individuals about other issues.

Plaintiff's NYSHRL and NYCHRL retaliation claims based on his report of hypertension survive as to Servco and Adams.

28

VI.   Hostile Work Environment Claims

A.  Plaintiff Adequately Pleads a Hostile Work Environment
     Under Section 1981, but not Under the ADA

Section 1981 and the ADA apply the same standard for hostile work environment claims. *Cf. Cadet v. All. Nursing Staffing of N.Y.*, 632 F.Supp.3d 202, 222 (S.D.N.Y. 2022) (holding that the same hostile work environment standard applies to section 1981 and Title VII) (citing *Littlejohn*, 795 F.3d at 315); *see also Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 73–74 (2d Cir. 2019) (holding that "hostile work environment claims are cognizable by the ADA" and the ADA "echoes" Title VII's approach). Under these statutes, "a plaintiff must show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *O'Brien v. City of N.Y., Dept. of Educ.*, 686 F.Supp.3d 221, 247 (E.D.N.Y. 2023) (quoting *Littlejohn,* 795 F.3d at 320–21). Courts should consider "both objective and subjective components: the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *O'Brien*, 686 F.Supp.3d at 247 (quoting *Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014)).

 Although hostile work environment claims are unique in that often rely on "a constellation of events over time," at least one act contributing to the claim must fall within the filing period. *King*, 96 F.4th at 560 (citing *Morgan*, 536 U.S. at 117). Generally, "incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) (citation modified). Though "[i]solated acts, unless very serious, do not meet the threshold

of severity or pervasiveness . . . . even a single act can meet the threshold if, by itself, it can and does work a transformation of the plaintiff's workplace." *Id.* (citation modified). When determining whether conduct is sufficiently severe or pervasive, courts "consider the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Cadet*, 632 F.Supp.3d at 228–29 (S.D.N.Y. 2022) (quoting *Littlejohn*, 795 F.3d at 321). Hostile conduct can be imputed to the employer when "the employer knows of the hostile work environment but fails to take appropriate remedial steps." *Smith*, 798 F. Supp. 2d at 453–54 (E.D.N.Y. 2011).

Plaintiff cannot sufficiently plead a hostile work environment claim under the ADA because he does not anchor this claim in a plausibly discriminatory incident. In the four timely allegations under the ADA (the second noose, the post-collision training and driving restriction, the parking prohibition after the swastika, and the denial of new tools), Plaintiff does not allege that any were motivated by his disability. As explained above, Plaintiff's assertions about the second noose, the parking prohibition, the denial of new tools, and the "I Can't Breathe" face mask do not sufficiently allege a discriminatory motive and therefore cannot carry his hostile work environment claim.

However, Plaintiff can plead a hostile work environment through his other surviving section 1981 claims. These include the two incidents where he was treated less favorably than specific white coworkers (namely, the post-collision training and restrictions, and Abrams forcing him to work in the heat and denying him access to provisions or the closest bathroom), as well as the second noose. Each incident is specific and discrete,

but this does not prevent Plaintiff from using them to support his claim, as they are sufficiently part of the same overall practice. *See King, Inc.*, 96 F.4th at 559-61 (2d Cir. 2024) (". . . a hostile environment is formed and shaped by an assemblage of discriminatory acts—*including* acts that might *also* support a discrete-act discrimination claim if timely filed."). Together, they plausibly meet the standard of a work environment sufficiently plagued with race-based discrimination for the same reason that each one individually survives dismissal under Plaintiff's discrimination claims as analyzed above. The "public nature of [the noose] display," in a "central" tool container that Plaintiff and other black employees used plausibly alleges a "legitimate threat" of racial discrimination and violence. See *Smith*, 798 F. Supp. 2d at 453 ("[W]hile African American employees viewed the noose for only a limited period of time, the Court finds that the public nature of the display, in the central garage, an area where all African American employees would pass that morning, suggests that a reasonable jury could conclude that it was intended as a legitimate threat.").

Furthermore, they are connected because Plaintiff complained to supervisor Abrams about the noose, and Abrams is the one who allegedly forced Plaintiff to work thirteen and a half hours in the sweltering heat, different than his white coworkers. Although Defendants contend that they sufficiently addressed the first noose incident (PSEG Mem. 19 n.5, 22 n.8), Plaintiff does not seem to agree (Ind. Defs.' Opp'n at 10); that will be an issue for the fact finder. There is no dispute that Plaintiff subjectively found his work environment to be hostile and abusive, and these incidents make it is plausible that a reasonable person would objectively perceive it that way as well.

Once again, though, the continuing violations doctrine does not revive Plaintiff's untimely claims of racial discrimination because they are either discrete decisions to suspend, temporarily terminate, or not promote Plaintiff, or they are not sufficiently related to his timely claims.

B. Plaintiff Adequately Pleads a Hostile Work Environment
   Under NYCHRL and NYSHRL

NYCHRL and NYSHRL employ a more lenient hostile work environment standard. *Mihalik*, 715 F.3d at 113; *Munjal*, 2022 WL 204775, at *9. A plaintiff need not meet the "severe or pervasive" standard, and instead only demonstrate they were "treated 'less well than other employees' because of the relevant characteristic." *Bilitich v. N.Y.C. Health and Hosps. Corp.,* 194 A.D.3d 999, 1118 (2d Dep't 2021) (quoting *Reichman v. City of New York*, 179 A.D.3d 1115, 1118 (2d Dep't 2020)); *Mihalik*, 715 F.3d at 110. Additionally, in 2019 the NYSHRL was amended to "be construed liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws, including those laws with provisions worded comparably to the provisions of this article, have been so construed." N.Y. Exec. Law § 300. Despite this change, "New York courts have not yet produced any substantive analysis of how this amendment changes standards of liability under the NYSHRL." *Cooper,* 2023 WL 3882977, at *3 (quoting *Kaye v. N.Y.C. Health & Hosps. Corp.*, No. 18 Civ. 12137 (JPC) (JLC), 2013 WL 2745556, at *17 (S.D.N.Y. Mar. 31, 2023)).

As Plaintiff meets the higher hostile work environment standard under section 1981, he sufficiently alleges such claims under NYSHRL and NYCHRL as well. *See Styka*, 2016 WL 3866550, at *2 ("A well-pled [federal] discrimination or retaliation claim is sufficient to support a corresponding claim under the NYSHRL, as well as under the

NYCHRL, which provides even broader protection than its federal and state counterparts."). His claim is also bolstered by the sufficient allegation that Adams retaliated against him on the basis of disability and in response to his protected reporting of his medical condition. (Am. Compl. ¶¶ 126–27). And, uniquely here, the continuing violations doctrine strengthens Plaintiff's claim by reviving several meaningfully connected but untimely incidents based on race or disability. These include Abrams' ridiculing of Plaintiff's shoulder injury in March 2010 (*Id.* ¶ 49); the October 2010 failure to promote plaintiff and instead hiring white employees to the role (*Id.* ¶ 65); Star's ridiculing and humiliating comment in November 2010, calling Plaintiff a "wounded animal" because of his medical condition and the related comments by a trainer that Plaintiff should not have been eligible for placement in a new department because of his injuries, and rumors that he might be fired as a result (*Id.* ¶¶ 83–84); the January 2011 taunting by other employees writing "RESS Boy" on Plaintiff's locker, referring to the lack of promotion (*Id.* ¶ 87); the 2011 suspension after plaintiff returned from medical leave in which Star allegedly played a role (*Id.* ¶¶ 94, 100); and the 2016 incidents where employees created, posted, and distributed humiliating flyers with Plaintiff's superimposed face, mocking his injuries and approved medical leave. (*Id.* ¶¶ 103–05).

Although temporally distant, they are related because they are similar to the circumstances at play in the surviving timely race- or disability-based incidents and similarly altered Plaintiff's work environment for the worse. The disability-related incidents all involve harassing behavior based on Plaintiff's debilitating medical conditions, and Plaintiff complained to the same supervisor (Star) and human resources employee (Irrizarry) about them to no avail. (Am. Compl. ¶¶ 88, 107, 109–10). These events similarly

added to the "toxic environment [which] has been allowed to continue festering" (Am. Compl. ¶ 110), and, together with Plaintiff's timely claims under NYSHRL and NYCHRL, target Plaintiff beyond a "mere utterance of an epithet which engenders offensive feelings." *O'Brien*, 686 F.Supp.3d at 247 (E.D.N.Y. 2023) (quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993)). Lastly, even though these otherwise untimely acts precede the 2019 amendment to NYHRL, Plaintiff's ultimate claim for a hostile work environment under this law is anchored in post-amendment incidents. The Court also believes that several, if not all of them—especially the disability-based ridicule from supervisors and coworkers—can still plausibly meet the pre-amendment "severe and pervasive" standard.

The continuing violations does not revive other incidents such as racial stereotypes articulated by a trainer in 2005 or a coworker in 2018 (Am. Compl. ¶¶ 36, 120). Although Plaintiff alleges these incidents as generally related to his race or disability, they were made sporadically over many years by different individuals and do not sufficiently plead any discriminatory intent.

Accordingly, Plaintiff's claims of a race-based hostile environment under section 1981, and a disability-based one under NYSHRL and NYCHRL, remain.

VIII.   <u>Plaintiff Adequately Pleads Aiding and Abetting Claims</u>

Under NYSHRL "[i]t shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden under this article, or to attempt to do so." N.Y. Exec. Law § 296(6). The same aiding and abetting standards are applied to the NYSHRL and NYCHRL because "the language of the two laws is virtually identical." *McHenry v. Fox News Network, LLC.*, 510 F.Supp.3d 51, 68 (S.D.N.Y. 2020) (quoting *Feingold*, 366 F.3d at 158).

To establish aiding and abetting liability for unlawful discrimination and harassment, the plaintiff must demonstrate that the defendant "actually participate[d] in the conduct giving rise to the plaintiff's [discrimination or] retaliation claim." *Friederick v. Passfeed, Inc.*, No. 21 Civ. 2066 (RA), 2022 WL 992798, at *9 (S.D.N.Y. Mar. 31, 2022) (quoting *Malena v. Victoria's Secret Direct, LLC,* 886 F.Supp.2d 349, 366 (S.D.N.Y. 2012)); *Feingold*, 366 F.3d at157–59. The aider and abettor must "share the intent or purpose of the principal actor," and the plaintiff must demonstrate that there was "direct, purposeful participation." *McHenry*, 510 F.Supp.3d at 68 (citations omitted). When the aider and abettor is the plaintiff's supervisor, they can be considered "an employer for the purposes of establishing liability under the NYSHRL if that supervisor actually participates in conduct giving rise to the discrimination." *Friederick*, 2022 WL 992798, at *9 (quoting *Feingold*, 366 F.3d at 157). Additionally, a defendant can be held liable for aiding and abetting even if their own acts serve as the basis for the employer's vicarious liability. *See e.g., McHenry*, 510 F.Supp.3d at 73; *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995) (abrogated on other grounds by *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 753 (1998); *but see Virola v. XO Commc'ns, Inc.*, No. 05-CV-5056 (JG) (RER), 2008 WL 1766601, at *20 (E.D.N.Y. Apr. 15, 2008) (explaining that multiple defendants may be liable for aiding and abetting one another, though "[a]n individual may not be held liable . . . merely for aiding and abetting his own discriminatory conduct but only for assisting another party in violating the NY[S]HRL.").

Both Abrams and Star are plausibly responsible for aiding and abetting the discrimination, retaliation, and hostile work environment targeted at Plaintiff. Although Individual Defendants claim that Plaintiff improperly relies on "conclusory assertions of

[their] ability to hire and fire," (Ind. Defs.' Mem. at 30), this argument ignores the specific assertions Plaintiff makes throughout the amended complaint as to Star's and Abrams' direct actions. Plaintiff alleges that Star made ridiculing comments about Plaintiff's medical conditions and was aware of comments by others, since Plaintiff complained to Star about them. (Am. Compl. ¶¶ 83–84, 88). Plaintiff also complained to Star about the humiliating posters. (*Id.* ¶ 109). Abrams was allegedly responsible for assigning Plaintiff to work outside on a hot day, while Plaintiff's "less senior, white" colleagues were allowed to work inside. (*Id.* ¶ 126). Similarly, Abrams allegedly threatened to demote Plaintiff after he told Abrams about his hypertension, and Plaintiff faced a driving suspension after disclosing his medical condition to Abrams. (*Id.* ¶¶ 126–27). As individual defendants can be held liable for aiding and abetting one another and the employer even if their own acts serve as the basis for their employer's vicarious liability, claims against Star and Abrams survive for aiding and abetting in the discrimination and retaliation against Plaintiff. *See McHenry,* 510 F.Supp.3d at 73.

## CONCLUSION

For the reasons set forth above, the Court grants in parts and denies in part Defendants' motion to dismiss.

All of Plaintiff's causes of action against corporate defendants other than Servco are dismissed. Plaintiff's first, second, and third causes of action are dismissed as to Individual Defendant Star. Plaintiff's fourth cause of action is dismissed with regard to Title VII and Section 1981 for all defendants, and with regard to NYSHRL and NYCHRL as to Individual Defendant Star. Plaintiff's seventh, ninth and tenth causes of action are dismissed. As noted, Plaintiff voluntarily dismissed his eighth cause of action.

Defendants' motions to dismiss Plaintiff's first, second, and third causes of action as to Defendants Servco and Adams; fourth cause of action with regard to NYSHRL and NYCHRL as to Defendants Servco and Adams; fifth cause of action as to Defendants Servco, Adams, and Star; sixth cause of action; eleventh cause of action; and Plaintiff's twelfth cause of action, are DENIED.

SO ORDERED.

/s/ Ramón E. Reyes, Jr.
_____

RAMÓN E. REYES, JR.
United States District Judge

Dated: February 2, 2026
       Brooklyn, New York